UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA  ) | |
| ) | |
| v.  ) | Criminal No. 24-cr-10081-ADB |
| ) | |
| JUSTIN CHAPPELL,  ) | |
| ) | |
| Defendant.  ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government respectfully recommends that this Court sentence defendant Justin Chappell to a term of 12 months of supervised release with special conditions to include mental health treatment and 100 hours of community service. While using excessive force under color of law is a serious offense that warrants punishment, the defendant's prompt acceptance of responsibility, mental and emotional conditions for which he is seeking help, his honorable and significant military service, and his service on behalf of veterans all weigh in favor of granting a downward departure and imposing a sentence that does not include incarceration.

## BACKGROUND AND OFFENSE CONDUCT

On July 2, 2022, the defendant, then a police officer with the Weymouth Police Department, was dispatched to respond to a report of a drunk man causing a disturbance. PSR ¶ 8. The events that followed were recorded by the defendant's body worn camera, as well as the body worn cameras of other officers and cameras in police cruisers. PSR ¶¶ 8, 11, 13. When the defendant arrived on the scene, he attempted to question the drunk man, but the man did not respond to his questions and did not follow commands to show his hands. PSR ¶ 9. The man instead assumed a "bladed" stance, indicating a readiness to fight. The defendant was fearful that the man had a weapon and would assault him, so the defendant extended his baton and struck the man multiple times on the backs of his legs. PSR ¶ 10. The strikes were ineffective. The man still did

not comply with the defendant's commands, so the defendant took the man to the ground and attempted to handcuff him behind his back. PSR ¶ 10-11.

Another Weymouth Police Officer then arrived on the scene and assisted the defendant in handcuffing the man. The defendant and the second officer walked the man, handcuffed behind his back, to the defendant's police cruiser. During the walk to the cruiser, the man was extremely intoxicated and continually used offensive language to insult the defendant and the second officer multiple times. PSR ¶ 11.

The defendant and the second officer asked the man to get into the back of the police cruiser. The man refused and actively resisted, stiffing his legs, and attempting to use his elbows to hit the officers though the man remained handcuffed behind his back. PSR ¶ 12. The defendant attempted to push the man into the cruiser, but he continued to resist. PSR ¶ 12. Using a closed fist, the defendant then punched the man 13 times in the side of his head near his eye in a rapid manner. PSR ¶ 13. The punches caused obvious pain and visible injuries to the man's head. PSR ¶ 13.

As a result of this incident, on July 7, 2022, the Weymouth Police Department notified the defendant that a termination hearing related to his actions on July 2, 2022 was scheduled for July 14, 2022. PSR ¶ 23. Before the hearing, on July 11, 2022, the defendant resigned from the Weymouth Police Department. *Id*. An internal affairs investigation regarding the defendant's use of force found that the defendant had violated the department's policies and procedures by using more force than was objectively reasonable and necessary against an actively resistant and assaultive subject. *Id*. That investigation further noted that the Weymouth Police Department had previously disciplined the defendant for punching a juvenile arrestee in the head with a closed fist

on February 24, 2022. As a result of that incident, the defendant received a one-day suspension and underwent additional training on de-escalation and use of force tactics. PSR ¶¶ 25-26.

A few months after his resignation, the defendant contacted the Captain from the Weymouth Police Department and apologized for his conduct. The defendant added he "never should have been a cop." PSR ¶ 24.

## U.S. SENTENCING GUIDELINES CALCULATION

While the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are advisory and not mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007). U.S. Probation has calculated the total offense level to be 15; the plea agreement contains the same calculation. Probation calculated the applicable guideline range for that offense level to be 18-24 months. The parties agreed to ask this Court to depart downward to offense level 8 for the reasons set forth below.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government respectfully recommends that this Court sentence the defendant to a term of 12 months of supervised release with special conditions to include mental health treatment and 100 hours of community service.

The defendant's conduct was serious, harmful, and warrants the public condemnation of a felony conviction. The defendant used his power and authority as a police officer to inflict harm on a citizen that was excessive and without any legal justification. The crime damages not only the individual victim, but also the public's trust in law enforcement, at the expense of well-intentioned law enforcement officers who are dedicated to the rule of law. As a result of this

conviction, the defendant will be barred from possessing a firearm and can never again be employed as a police officer in Massachusetts. *See e.g.*, MGL Ch. 22C, § 14.

On the other hand, Justin Chappell is very much an atypical defendant. First, unlike most defendants charged with using excessive force under color of law (who have denied responsibility, proceeded to trial, and sometimes even provided arguably-perjurious testimony to attempt to avoid being held accountable), this defendant apologized for his behavior before any criminal investigation began. Second, while a not legal justification for his conduct, a substantial factor in the defendant's actions on July 2, 2022 was his diagnosed Post Traumatic Stress Disorder ("PTSD"), following overseas deployments to high-combat areas in the military.

The government recommends that the Court depart downward in this case for two reasons. First, the defendant's "mental and emotional conditions" are present "to an unusual degree and distinguish the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.3.[1] Second, the defendant's history documents unusual and distinguishable military service that warrants a departure under U.S.S.G. § 5H1.11.

While a defendant's mental and emotional conditions and service in the U.S. Military and charitable work with veterans do not ordinarily warrant a departure from the sentencing guidelines, *see e.g., United States v. Jim*, 347 F.Supp.3d 847, 861 (D.N.M. 2018) (even though the defendant in a child pornography case had received exemplary reviews in his performance reports, earning either the highest or second highest ratings possible, during his military career, the court concluded that his service was not present in an unusual degree or distinguishable from that of defendants in other cases), the situation in this case is different. Courts are authorized to grant a downward

---

[1] Caselaw interpreting the previous version of section 5H1.3 that required that a "significantly reduced mental capacity ... contributed," at least to some degree, "to the commission of the offense" held that the condition did not have to be the but-for or sole cause of the offense. *See e.g., United States v. Shore*, 143 F.Supp.2d 74, 80 (D. Mass. 2001)

departure for special factors like mental conditions or military service "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 96 (1996). *See, e.g., United States v. Mehta*, 307 F. Supp. 2d 270, 271 (D. Mass. 2004) (departing downward under section 5H1.11 from a total offense level of 15 and sentencing the defendant to probation, based on the defendant's exceptional charitable service to his religious community and the poor, among others).

In this case, both the defendant's mental conditions and his military service are outside of the ordinary and present to an exceptional degree. A substantial factor in the government's recommendation is that at least part of the defendant's conduct that led to his use of excessive force, a lack of proper temperament, was related to his well-documented PTSD. That PTSD most likely resulted from the defendant's involvement in high-combat operations in Afghanistan against the Taliban (including exposure to 200 firefights, 10 blasts within 100 meters, burn pits, gas/fuel flames, death or dying, and human remains) and for which he received "Commendation Medal" reports. PSR ¶¶ 79-81, 88. After leaving the army in 2010, the defendant worked as a security contractor in Iraq. *Id*. The defendant's first true civilian job back in the United States was with the Weymouth Police.

While much of this conduct is admittedly self-reported by the defendant, it appears that the defendant has taken substantial steps to deal with his PTSD, and he also volunteers to assist other veterans with similar experiences and diagnoses.

The government's recommendation of 12 months of supervised release to include mental health programming and 100 hours of community service balances the seriousness of this crime and the need for general deterrence against this defendant's unique individual circumstances. Here, a sentence of no incarceration is warranted because the defendant quickly accepted responsibility,

resigned from his job, and acknowledged he should not have been a police officer, and sought intensive treatment for his PTSD. The government's recommendation considers the defendant's conduct, history, and characteristics as well as the important goal of encouraging police officers to seek help for their mental health challenges and to promptly accept responsibility for color of law violations.[2]

## THE FACTORS UNDER SECTION 3553(a)

Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence and instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. 18 U.S.C. § 3553(a). Section 3553(a) then directs a sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed" to serve the four overarching aims of sentencing. §§ 3553(a)(1), (2)(A)–(D); *see Gall v. United States,* 552 U.S. 38, 50, n. 6 (2007). The Court must also consider the pertinent guidelines and policies adopted by the Sentencing Commission. §§ 3553(a)(4), (5); *see Gall*, 552 U.S. at 50, n. 6.

A. **The Nature and Circumstances of the Offense and Defendant's Characteristics (18 U.S.C. § 3553(a)(1))**

   1. *Nature and Circumstances of the Offense*

This offense involves an abuse of public trust. Excessive force cases in particular signal to the public that certain law enforcement officers believe that the rules do not apply to them and that they can deploy punishment without the formalities of judicial process. The rare individual officer who commits a § 242 violation thus has an outsized impact on how the public perceives all of law

---

[2]  The victim in this case had no objection to the agreed-upon recommendation set forth in the plea agreement.

enforcement. As a result, law-abiding officers who take seriously the duty to conduct their difficult work within the confines of the Constitution must overcome the challenge of promoting public safety in the face of public skepticism. Meanwhile, the broader criminal justice system faces the challenge of reasserting its moral authority in light of a rogue officer's unlawful conduct. "When a law enforcement officer commits a crime . . . the system has failed, because the very people whom we have entrusted to protect the citizenship from crime are subjecting citizens to crime. A law enforcement officer's violation of the law is not comparable to an ordinary criminal's violation. Civil rights crimes go to the core of our system and endanger the entire structure of our government . . ." *United States v. Rodella*, No. CR 14-2783 JB, 2015 WL 711941, at *50 (D.N.M. Feb. 5, 2015), *aff'd* 804 F.3d 1317 (10th Cir. 2015).

The government's proposed sentence of 12 months supervised release with 100 hours of community service and mental health programming recognizes the societal harms wrought by the defendant's misconduct. The defendant's immediate acceptance of responsibility and resignation, without attempting to blame someone else or hide his use of excessive force, lessens the negative impact of his crime. To be sure, the crime was serious and worthy of punishment, but the defendant's mitigating factors weigh in favor of a downward departure.

    2. *History and Characteristics of the Defendant*

The defendant served in the United States Army from 2005–2010. PSR ¶ 88. He was deployed to Afghanistan twice in that time. *Id*. The defendant's military records indicate that he "willingly [left] the safety of Hesco barriers, exposing himself to enemy fire and possible injury in order to lead and motivate his Soldiers." PSR ¶ 88. During his service, he was exposed to 200 firefights, 10 blasts within 100 meters, burn pits, gas/fuel flames, death or dying, and human remains. PSR ¶ 80. He was diagnosed by the VA with PTSD. PSR ¶ 81. After leaving the military,

the defendant worked as a security contractor from 2011–2015, during which time he was stationed in Iraq. PSR ¶ 94. His experiences there also contributed to his PTSD. PSR ¶ 94. The defendant has a history of suicidal ideation, was hospitalized for the same in 2019, and has been receiving treatment since that time. PSR ¶ 82-83.

The defendant was a police officer in Weymouth from 2015–2022. PSR ¶ 93. After the defendant's use of excessive force on July 2, 2022, the Weymouth Police Department notified the defendant that a termination hearing related to his actions had been scheduled. PSR ¶ 23. On July 11, 2022, prior to the termination hearing, the defendant resigned from the Weymouth Police Department. PSR ¶ 23. A few months after he resigned, the defendant reached out to one of the supervisors in the Weymouth Police Department, apologized for putting the department at risk, and stated that he never should have been a cop. PSR ¶ 24.

### B. The Need for Sentence Imposed (18 U.S.C. § 3553(a)(2))

#### 1. General Deterrence

This is a serious offense. The defendant caused harm both to a victim and to the public perception of law enforcement. Police officers need to understand that if they abuse their authority, they will face consequences, including a felony conviction. Here, the government's recommendation for appropriate consequences considers the unique circumstances of the defendant, and in particular, the fact that he is no longer a police officer and will not be in a position to abuse, or even exert, authority over others under color of law.

General deterrence is an important goal of sentencing, and the government submits that its recommended sentence deters the criminal conduct of others who act under color of law to violate rights, while also sending a message that accepting responsibility for one's actions and taking immediate steps to resign are viewed favorably.

*2. Comparable Cases*

A chart of known prosecutions since 2000 under 18 U.S.C. § 242 in the District of Massachusetts is attached as Appendix A. Notably, the government has not been able to find any recent case in the District of Massachusetts where a defendant pleaded guilty to violating 18 U.S.C. § 242. That alone makes this case unique and significant. The government's recommendation in this case is intended to encourage others in positions of power to take responsibility for their actions when they deprive individuals of their rights under color of law.

## CONCLUSION

For the foregoing reasons, the Government submits that the court should sentence the defendant, JUSTIN CHAPPELL, to a term of 12 months of supervised release with special conditions to include mental health treatment and 100 hours of community service.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

*/s/ Torey B. Cummings*
Neil J. Gallagher, Jr.
Torey B. Cummings
Assistant U.S. Attorneys

Date Submitted: July 9, 2024

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant United States Attorney

July 9, 2024